# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| | ) | |
| **TIMOTHY PISCIOTTA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 04-2305-CM** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on plaintiff Timothy Pisciotta's claim for social security disability benefits and claim for disabled adult child benefits on the record of plaintiff's mother. Plaintiff appeals under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), from the administrative denial of plaintiff's claim for a period of disability and disability insurance benefits under § 216(i) and § 233(a) of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423(a). Plaintiff initially filed his Applications for A Period of Disability, Disability Insurance Benefits and Childhood Disability Benefits on his mother's account on October 12, 2001. On March 14, 2004, after an administrative hearing, administrative law judge (ALJ) William G. Horne found that plaintiff was not disabled. The Appeals Council of the Social Security Administration subsequently denied plaintiff's request for review of the ALJ's decision and, as such, the decision of the ALJ stands as the Commissioner's final decision. Plaintiff claims that the Commissioner's decision should be reversed and the case remanded for a new hearing because (1) the ALJ erred in the

weight he gave the opinion of plaintiff's treating physician, and (2) plaintiff cannot perform jobs in the

national economy.

I.       **Facts**

        **A.**       **Plaintiff's Disability Application**

In his applications protectively filed on September 18, 2001, plaintiff alleged that he became

disabled on March 1, 1993, at age ten.  In his disability report, plaintiff listed his impairments as Attention

Deficit Hyperactivity Disorder (ADHD), Learning Disability (LD), Oppositional Defiant Disorder (ODD),

depression, mild hearing loss, and a knee problem.  He reported that, as a result of his impairments, he was

unable to concentrate.  In a health assessment questionnaire, plaintiff indicated that his impairments caused

memory problems, test anxiety, problems with spelling and grammar, and "sometimes" attention problems.

Plaintiff has a high school education and attended special education classes in grades eight through twelve.

Plaintiff has worked as a grocery sacker, cook, restaurant server, and shipping/receiving clerk.

        **B.**       **Plaintiff's Testimony**

Plaintiff testified before ALJ Horne on January 8, 2004.  Plaintiff testified that he was twenty-one

years old, seven feet tall, and weighed 310 pounds on the day of the hearing.  Plaintiff testified that it took

him six years to get through high school because he had trouble concentrating, had anger problems, and

dropped out of school "a few times."  He stated that he was in special education classes because he was

slow in math and reading, had problems remembering things, and cannot comprehend what he reads.

Plaintiff testified that he had been in Two Rivers Psychiatric Hospital six or seven times for anger control due

to belligerent attitudes and anger outbursts because of minor things.  Plaintiff stated that, since the year 2000,

he had been treated by Dr. John H. Stanley, a psychiatrist, and that the treatment was on-going.  Plaintiff

testified that he was still seeing Dr. Stanley once a month and that Dr. Stanley prescribed his medications.

Plaintiff testified that he had trouble remembering to take his medicine and trouble with concentration.

### C.    Medical/Vocational Assessments

Plaintiff has been diagnosed and treated for ADHD, LD, ODD, Major Depressive Disorder and knee problems.  He has been hospitalized for these conditions on numerous occasions and his school records indicate that he has attended a number of different schools because of problems created by his impairments.  He has been treated by Dr. Stanley between hospitalizations.

Plaintiff underwent an initial assessment at Pathways/Family Mental Health ("Pathways") on September 15, 2000.   At the time of that assessment, plaintiff demonstrated no problems with general appearance, had a lot of gross motor movements, had no problems with speech, flow of thought, mood, affect, or content of thought, had mild concentration problems, and was assessed as having an unrealistic view regarding his mental illness and lack of motivation.

On February 7, 2001, plaintiff's Pathways counselor reported that plaintiff needed help in some academic areas and vocational training.  Plaintiff's counselor stated that she thought plaintiff could perform at a higher level than he was.

On July 21, 2001, Dr. Alan R. Israel conducted a consultative examination of plaintiff.  Plaintiff told Dr. Israel that his two most recent hospitalizations had happened after he went off of his medication.  Plaintiff and his mother both stated that plaintiff's behavior was improved, and plaintiff exhibited no problems with mood, attention, motor activity, speech, flow of thought, cognition or memory.  Dr. Israel's report concluded that plaintiff could understand and remember simple instructions, and could concentrate on tasks, adapt to a work-related environment and engage in social processes.

On September 21, 2001, Dr. Stanley prepared a report on plaintiff in which he stated that plaintiff was not doing well, had problems with poor hygiene and was socially inept.  In the same report, Dr. Stanley also stated that plaintiff had improved after going back on his medication and going back to live with his mother.

An August 21, 2003 report by plaintiff's Pathways counselor stated that plaintiff had made progress and was becoming independent, working towards completing school, and was maintaining employment.

Plaintiff enrolled in the Job Corps in approximately December 2003.  In January 2004, an instructor with the Job Corps rated plaintiff's progress as slow to moderate, but made no specific mention of problems that would preclude plaintiff from finding gainful employment at the conclusion of his training.

On January 17, 2004, Dr. Stanley prepared a checklist assessment of plaintiff's ability to do work-related activities.  Dr. Stanley described plaintiff's mental abilities and aptitude necessary to perform unskilled work as "poor" – which was defined as "no useful ability to function in this area" – in the following categories: maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress.  In explanation of his finding that plaintiff rated as poor in those categories, Dr. Stanley concluded that plaintiff was immature, dependent, and distractable even though he was on the prescription drug Ritalin.

**D.     The ALJ's Findings**

Following the January 2004 hearing, the ALJ made the following findings:

1. Claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 3, 2003.

2. The claimant has met the non-disability requirements for Childhood Disability Benefits set forth in Section 202(d) of the Social Security Act since May 1, 2000.[1]

3. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

4. The claimant's major depressive disorder, mild high frequency hearing loss on the left, and knee problem are considered "severe" based on the requirements in the Regulations (20 CFR § 404.1520(c)).

5. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, regulation no. 4.

6. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.  Likewise, the allegations of the claimant's mother and other 3rd parties are also not found to be fully credible for the reasons set forth in the body of the decision.

7. The claimant has the following residual functional capacity: medium work which is simple, routine, and non-repetitive.  The environment must be noncomplex with no fixed quotas. The claimant can have no supervisory responsibilities and must be able to alternate sitting and standing.

8. The claimant has no past relevant work ( 20 CF R § 404.1565).

9. The claimant is a 'younger individual' ( 20 CFR § 404. 1563).

---

[1]Although plaintiff alleged that he has been disabled since March 1, 1993, plaintiff was first insured for disability benefits on April 1, 2000.  Therefore, pursuant to 20 C.F.R. § 404.316(a), the earliest that plaintiff could receive disability benefits was April 1, 2000.  Accordingly, the relevant period for considering evidence and testimony regarding plaintiff's alleged disability is April 1, 2000 through March 14, 2004 (the date of the ALJ's decision).

10. The claimant has a limited education ( 20 CFR § 404.1564).

11. Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work experience, he could be expected to make a vocational adjustment to work that exists in significant numbers in both the local and the national economies.  Examples of such jobs include work as duplicating machine operator, laundry folder, and microfilm mounter.

12. The claimant was not under a "disability," as defined in the Social Security Act, as amended, at any time from April 1, 2000 through June 30, 2003 or May 1, 2000 through the date of this decision (20 CFR § 404. 1520(g)).

13. Accordingly, claimant is "not disabled" and was not under a "disability," as defined in the Social Security Act, for the pertinent period in this case.

## II.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The court reviews the decision of the Commissioner to determine whether the correct legal standards were applied and whether the record as a whole contains substantial evidence to support the Commissioner's decision.  *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).  The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  Nor will the findings be affirmed by isolating facts and

labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

## III.    Discussion

Plaintiff bears the burden of proving disability under the Social Security Act. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. *See* 42 U.S.C. § 423(d)(1)(A). To determine disability, the Commissioner uses a five-step sequential evaluation. The Commissioner determines: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant has a severe impairment, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the claimant can do any kind of work. *See* 20 C.F.R. §§ 404.1520, 416.920. If a claimant satisfies steps one, two and three, he will automatically be found disabled. If a claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

In this case, the ALJ denied benefits at step five, finding that plaintiff is capable of performing other jobs in the national economy. In making this determination, the ALJ found that the testimony of plaintiff's treating physician, Dr. Stanley, regarding plaintiff's limitations was not totally credible. Instead, the ALJ relied on the testimony of another physician, Dr. Israel, and the medical and vocational evidence in the

record as a whole.  The ALJ subsequently determined that plaintiff had the residual functional capacity

(RFC) to perform work that exists in significant numbers in both the local and the national economies, such

as duplicating machine operator, laundry folder, and microfilm mounter.

Plaintiff claims that the ALJ erred in the weight he gave the opinion of plaintiff's treating physician,

and, as a result, the ALJ subsequently failed to include all of plaintiff's impairments in his determination of

plaintiff's RFC.  Plaintiff contends that the ALJ improperly rejected Dr. Stanley's opinion and accepted the

opinion of Dr. Israel, a one-time consulting doctor, on plaintiff's RFC without providing a reason for

rejecting Dr. Stanley's opinion.  Plaintiff contends that he has an established history of treatment with Dr.

Stanley that is supported by his medical record and that, if the ALJ had accepted Dr. Stanley's opinion,

there would be no work that plaintiff could perform in the national economy.  Plaintiff also argues that Dr.

Israel's opinion is the only opinion in the record that contradicts Dr. Stanley's.  Plaintiff additionally points

out that, during the hearing before the ALJ, the vocational expert testified that a claimant with the RFC

described in Dr. Stanley's report would not be able to perform work in the national economy.

The Commissioner contends that the ALJ found that Dr. Stanley's assessments were not supported

by his records, were internally inconsistent, and were not supported by the other evidence of record, and

thus, the ALJ discounted Dr. Stanley's assessments for specific, legitimate reasons.

A treating physician's opinion is entitled to great weight because it "reflects expert judgment based

on continuing observation of a patient's condition over a prolonged period of time."  *Williams v. Chater,*

923 F. Supp. 1373, 1379 (D. Kan. 1996); *see also Velasquez v. Apfel*, 28 F. Supp. 2d 1285, 1287 (D.

Colo. 1998) (finding that because the treating doctor had followed claimant for many years, he was in a

superior position to evaluate claimant's restrictions and, accordingly, his opinion should have been afforded

-8-

special weight).  The law of the Tenth Circuit requires that the treating physician's opinion be given

substantial weight unless good cause is shown to disregard it.  *Goatcher v. United States Dep't of Health*

*& Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995).  Treating physicians' "opinions are binding upon

the ALJ 'unless they are contradicted by substantial weight to the contrary.'"  *Hintz v. Chater*, 913 F.

Supp. 1486, 1492 (D. Kan. 1996) (quoting *Claassen v. Heckler*, 600 F. Supp. 1507, 1512 (D. Kan.

1985)).

When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to

examine the other physicians' reports to see if they outweigh the treating physician's reports.  *Goatcher*, 52

F.3d at 289-90.  Consulting and non-treating physicians' opinions are of suspect reliability and, if improperly

given greater weight than the opinions of the treating physician, may be grounds for reversal.  *See Frey v.*

*Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (non-treating physician's opinions are of suspect reliability).

The Tenth Circuit requires the ALJ to consider the following: (1) the length of the treatment relationship and

the frequency of the examination; (2) the nature and extent of the treatment relationship, including treatment

provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether

the physician is a specialist in the area upon which the opinion is rendered; and (6) other factors brought to

the ALJ's attention which tend to support or contradict that opinion.  *Goatcher*, 52 F.3d at 290 (citing 20

C.F.R. § 404.1527).

The Commissioner contends that Dr. Stanley's September 21, 2001 report was internally

inconsistent in that Dr. Stanley stated both that plaintiff was not doing well and that plaintiff was back on

medication and making progress.  Further, the ALJ found that Dr. Stanley's January 2004 assessment,

indicating that plaintiff had only poor or no ability in most work-related mental areas, was inconsistent with the other accompanying records.  The records that the ALJ reviewed consisted of questionnaires completed by plaintiff between April 28, 2001 and November 1, 2003, reflecting various symptoms that could be rated on a scale of one to six, with one indicating no problem and six indicating a serious problem.  Considered as a whole, those records reflect that no symptom was ever rated at a six and only four symptoms during that time period were rated at a five.  Ratings of one or two, indicating few or no problems, totaled approximately eighty-six percent of the total possible responses.  The Commissioner points out that, although plaintiff entered the responses on the questionnaires, Dr. Stanley's notes on the questionnaires do not appear to dispute plaintiff's responses, and Dr. Stanley's notes on the questionnaires do not support his September 21, 2001, or January 17, 2004 assessments.

The Commissioner further argues that the ALJ found that Dr. Israel's assessment that plaintiff was capable of understanding and remembering simple instructions, concentration and persistence on tasks, adapting to a work-related environment, and engaging in social processes was supported by the objective evidence elicited by Dr. Israel and also was consistent with the rest of the record. The Commissioner contends that the ALJ's assessment of Dr. Stanley's credibility was further supported by the testimony of Dr. Richard Watts, a medical expert who reviewed the evidence and was present at the hearing in January 2004.  Dr. Watts' opinion was that plaintiff's impairments did not meet or equal a listing for a disability under the regulations, and that plaintiff had no physical limitation and could perform medium work.  Dr. Watts testified that plaintiff could perform work that was reasonably simple and repetitive.

In his decision, the ALJ acknowledged that plaintiff has mental problems and that those problems could impose some limits on his ability to perform work-related activities.  However, after considering all of

the medical and vocational evidence, the ALJ did not find plaintiff to be disabled.  The ALJ noted that, although plaintiff testified that he was seeing Dr. Stanley once per month and taking prescription medication for his emotional problems, plaintiff also admitted that he had not always taken his medication.  Further, the record shows that there were several months after April 2000 when plaintiff was not seeing any mental health professional for treatment.  The totality of the evidence led the ALJ to conclude that plaintiff had been treated for mental problems, but not as intensely as he would have expected if plaintiff had disabling emotional problems.

In the instant case, the ALJ's final decision indicates that he carefully considered and applied the *Goatcher* factors in rejecting Dr. Stanley's opinion on questions relating to plaintiff's RFC.  Based on the record presented, the court finds that substantial evidence exists to support the ALJ's decision that Dr. Stanley's opinion on plaintiff's RFC was not credible in that it was internally inconsistent and contradicted the weight of the evidence in the record as a whole regarding plaintiff's RFC, especially for the relevant period (April 2000 through March 14, 2004).  Accordingly, the court upholds the ALJ's determination to give Dr. Stanley's opinion little weight in light of the rest of the record evidence and testimony.  As a result, because plaintiff's claim that he cannot perform jobs in the national economy is based on his claim that the ALJ improperly rejected Dr. Stanley's opinion, plaintiff's argument on that issue is moot.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is affirmed.

Dated this 19th day of July 2005, at Kansas City, Kansas.


s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

-11-